Entered on Docket
December 23, 2013
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



The following constitutes
the order of the court. Signed December 23, 2013

_____
M. Elaine Hammond
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br>RICHARD GONZALES, JR. and<br>DEANNA MECHELLE GONZALES,<br>                            Debtors/ | Case No. 12-47945 MEH<br>Chapter 7 |
| LANDMARK HOME MORTGAGE, INC.<br>                            Plaintiff<br>v.<br>RICHARD GONZALES, JR. and<br>DEANNA MECHELLE GONZALES,<br>                            Defendants/ | Adv. No. 12-04242 AH |

## MEMORANDUM DECISION

Plaintiff Landmark Home Mortgage, Inc. ("Landmark") brought this adversary proceeding against Debtors Richard and Deanna Gonzales seeking to establish that Landmark's claim is exempt from discharge pursuant to 11 U.S.C. § 523(a)(2) and (a)(6). Trial was held on December 3 and 4, 2014. This memorandum decision constitutes the court's findings and conclusions in accordance with Federal Rule of Bankruptcy Procedure 7052. The court finds that Landmark has not established that its claim is exempt from discharge.

## Background

Debtors obtained financing to purchase a home in 2007. This was the first real estate purchase or real estate borrowing by either Debtor. They understood the terms of the financing to be 100% financing, 0%

down. They obtained a loan for 80% of the loan value from Landmark and a loan for the remaining 20% from Bank of America ("BofA") as a Home Equity Line of Credit, using the property to be purchased as collateral. At the time of funding, Landmark believed that it was making a loan for 80% of the purchase amount and that Debtors would pay the remaining 20% from their own funds. The loan from Landmark closed on or about June 14, 2007 (the "Loan").

Landmark obtained a default judgment against Richard Gonzales on November 14, 2011 (the "Judgment"). The Judgment arose from a cross-complaint brought by Landmark against EZ Land Funding, Inc. ("EZ Land"), the individuals employed by EZ Land, and approximately 30 borrowers. The cross-complaint alleged four causes of action against all cross-defendants. Only the cause of action for fraud is consistent with a determination of nondischargeability. The Judgment award consists of compensatory damages in the amount of $478,564.25, plus costs of $355, jointly and severally with cross-defendants. It also includes an award of exemplary damages in the amount of $10,000 against Richard Gonzales.[1] Joint and several liability is based upon theories of aiding and abetting between the cross-defendants and the tort of another liability. At trial, Landmark asserted the Judgment is issue preclusive on a determination of whether Landmark's claim against Mr. Gonzales is exempt from discharge.[2]

The evidence at trial established that the broker, EZ Land, made fraudulent representations in numerous loans presented to Landmark. Their acts included falsifying information and documents presented for underwriting and hiding the true nature of the transaction, including borrowers' income, assets and that funds were borrowed for a down payment. Landmark documented each of the loans presented to it on a "reduced docs" basis whereby the only information they reviewed was the borrowers' representations

---

[1] Defendants argue they were not given proper notice prior to entry of the Judgment. After being served with the initial complaint, Defendants met with Plaintiff's counsel, where they assert they first learned of the broader fraudulent activity involving EZ Land. Ultimately, Landmark decided not dismiss their claims against Debtors. Instead, Landmark's counsel mailed a letter to Debtors proposing a settlement, and informing them that if they chose not to settle, they needed to file an answer within 20 days. Debtors testified that they do not recall receiving this letter, however, their recollection was limited on several points. No action has been taken in the state court to address the default judgment.

[2] Landmark asserts issue preclusion in its trial brief and opening and closing arguments. Landmark never brought a motion for summary judgment seeking such relief.

2

regarding their employment, income and current assets. Landmark did not independently verify the information provided by EZ Land.

Notably absent from any evidence presented at trial is the initial loan application reviewed by Landmark in its underwriting of the loan. The only documents introduced that were part of the underwriting process are two bank account statements. The bank statements include incorrect account balances and monthly charges not related to the Debtors, for example, a recurring charge for a health club membership that Debtors did not have. The Debtors testified that they do not recall providing bank statements to EZ Land. The evidence presented provides that falsified bank statements were a consistent part of EZ Land's scheme.

## Issue Presented and Applicable Law

The issue presented is whether Landmark holds a nondischargeable claim against the Debtors based upon this Loan. Landmark seeks to have its claim exempted from discharge based upon Bankruptcy Code §§ 523(a)(2)(A) and (B) and 523(a)(6).

Section 523(a)(2)(A) excepts from discharge a debt for money obtained by "(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

The Ninth Circuit has consistently held that a creditor must demonstrate five elements to prevail on any claim arising under § 523(a)(2)(A). *See, e.g. Anastas v. American Sav. Bank* (*In re Anastas*), 94 F.3d 1280, 1284 (9th Cir. 1996). The five elements, each of which the creditor must demonstrate by a preponderance of the evidence, are:

> (1) the debtor made the representations; (2) that at the time he knew they were false; (3) that he made them with the intention and purpose of deceiving the creditor; (4) that the creditor relied on such representations; (5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made.

*American Express Travel Related Servs. Co. v. Hashemi* (*In re Hashemi*), 104 F.3d 1122, 1125 (9th Cir. 1996).

Section 523(a)(2)(B) excepts from discharge a debt for money obtained by use of a statement in writing, (i) that is materially false, (ii) respecting the debtor's financial condition, (iii) on which the creditor reasonably relied; and (iv) that the debtor caused to be made with intent to deceive.

Section 523(a)(6) excepts from discharge an injury inflicted by the debtor that is both "willful" and "malicious." *Matter of Ormsby*, 591 F.3d 1199, 1206 (9th Cir. 2010). Willfulness requires the injury to be deliberate or intentional, requiring a subjective motive to inflict injury or a substantial certainty that injury would occur. Maliciousness requires a wrongful act, intentionally performed, that necessarily causes injury, which is committed without just cause or excuse.

Landmark bears the burden of establishing by a preponderance of the evidence that the elements of an exception to discharge are established. *Grogan v. Garner*, 498 U.S. 279, 291 (1991). As such, exemptions to discharge are narrowly construed against an objecting creditor and in favor of the debtor. *Snoke v. Riso* (*In re Riso*), 978 F.2d 1151, 1154 (9th Cir. 1992).

Analysis

**1. Issue Preclusion**

The court finds that the Judgment is not issue preclusive to the determination of nondischargeability. The Judgment was obtained by default and does not include any specific findings by the court. Landmark sought relief against Debtors on four different claims: money had and received, unjust enrichment, fraud and unfair business practices. Only the fraud claim is relevant to the determination of nondischargeability. Based upon the transcript of the prove-up hearing before the state court, the fraud claim includes claims based on theories of aiding and abetting EZ Land's fraud, and the tort of another. Aiding and abetting assumes as a matter of law that a party has knowledge of the scheme if they receive a financial benefit from it. Landmark relied on this legal assumption in obtaining the Judgment, and the related damage award. The assumption of Debtors' knowledge of a broad fraudulent scheme perpetrated by EZ Land is not consistent with specific findings required for a determination of nondischargeability. The only fact determined in connection with liability based upon aiding and abetting is that Debtor's received a financial benefit from the scheme. This is

4

not the same issue as a factual determination that Debtors had knowledge of the scheme and acted with the requisite subjective intent to deceive or intentionally harm Landmark.

In addition, the Judgment does not specify the grounds upon which Landmark was awarded exemplary damages of $10,000 against Mr. Gonzales. Landmark requested an award of exemplary damages in this amount against each borrower it pursued for the default judgment. The representation made by Landmark at the prove-up hearing was that this amount was selected as a nominal amount that any court would support. The testimony provided as to why exemplary damages were appropriate related exclusively to acts by employees or brokers of EZ Land. A $10,000 award is only nominal in comparison to the total damages awarded based on the aiding and abetting theory, and the testimony of acts by EZ Land's representatives relates to EZ Land's broad scheme of fraudulent activity, rather than to the Debtors' individual loan.

**2. § 523(a)(2) – Fraud in the Inducement:**

Landmark asserts misrepresentations on the part of Debtors in the loan closing documents and a check written by Mr. Gonzales for the down payment amount.

<u>Intentional misrepresentation of material facts:</u>

**URLA Representations**:

At closing, Debtors signed and initialed a copy of the Uniform Residential Loan Application ("URLA"). The parties agree that the URLA signed at closing misrepresents the available funds in Debtors' bank accounts at the time of loan origination and closing. Debtors testified that they did not provide the stated balances to EZ Land. No evidence was presented indicating that Debtors provided the false information to EZ Land in their initial application. In addition, page 4, Section VIII of the URLA includes the question "Is any part of the down payment borrowed?" The URLA signed at closing is marked "No" for borrower and co-borrower. Debtors further assert that since they understood that 100% of the purchase amount was to be borrowed, there was no down payment. There is no evidence that the Debtors reviewed, or were aware of, this representation at closing, thus there is little evidence of Debtors' subjective intent to misrepresent information to Landmark.

5

Landmark argues that EZ Land's misrepresentations and intent to deceive Landmark should be attributed to Debtors on the basis that EZ Land acted as Debtors' agent for the Loan. Landmark relies on admissions made by Debtors in other proceedings to establish that EZ Land was Debtors' agent. The evidence presented at trial indicates that EZ Land was also an agent for Landmark; three weeks after closing Landmark paid a broker fee of $23,490 to EZ Land on account of the Loan. Payment was made by check issued by Landmark. Once Landmark discovered the fraud associated with other EZ Land loans, it stopped payment on the check. EZ Land later sued Landmark to recover unpaid fees.[3] Thus, the court finds that EZ Land was a dual agent of Debtors and Landmark. The evidence presented does not establish that EZ Land acted solely as an agent for Debtors in its intentional misrepresentations. As such, the court does not find that EZ Land acted with the apparent authority of the Debtors such that EZ Land's intentional misrepresentations may be attributed to the Debtors. *See American Society of Mechanical Engineers, Inc. v. Hydrolevel Corp.*, 456 U.S. 556 (1982) (discussing apparent authority of agent).

Even if EZ Land's intent were attributed to Debtors, it would not result in a nondischargeable claim, as only those misrepresentations made by EZ Land related to the Loan can form the basis for damages. Misrepresentations made by EZ Land on behalf of other borrowers may not be attributed to Debtors on the basis of agency.

In the interest of judicial efficiency, the court provides the following alternate analysis. If EZ Land's subjective intent to deceive were attributed to Debtors, the remaining elements to be established are reliance and damages.

<u>Reliance:</u>

Reliance is established by the testimony of Hao Nguyen. Mr. Nguyen testified that Landmark relied upon the representations that Debtors' were providing 20% of the purchase amount from their own funds in approving the loan. He further provided that Landmark did not fund the Loan until all closing documents were signed by Debtors.

---

[3] The evidence does not show whether or not the unpaid fee associated with the Loan was included in EZ Land's complaint against Landmark.

6

Damages:

The final element that Landmark must establish is that its damages were proximately caused by the Debtors' misrepresentation. Proximate cause requires: (1) causation in fact, meaning that Debtors' misrepresentation must be established to have been a "substantial factor in determining the course of conduct that resulted in [Landmark's] loss" and (2) legal causation, meaning that Landmark's loss could be "reasonably expected to result from the reliance." Restatement (Second) of Torts §§ 546 and 548A.

Landmark asserts the damages it obtained in the Judgment of $488,561 are nondischargeable. The damages are not the anticipated damages of default on a loan. Consistent with its standard business practices, shortly after funding the Loan, Landmark sold the loan to Countrywide. Thus, any default on the Loan has not damaged Landmark. Instead, Landmark asserts damages for the employee time incurred investigating loans originated by EZ Land, loss of its business after Countrywide terminated its relationship with Landmark, and attorneys' fees and costs associated with litigation with EZ Land and multiple borrowers.

The Loan closed on or about June 15, 2007. Approximately two months later, Countrywide demanded Landmark repurchase seven loans brokered by EZ Land based on defaults in the underwriting and qualification of brokers. It subsequently demanded that an additional two loans be repurchased.[4] The Loan was not one of the loans included in Countrywide's repurchase demand. Further, it was not in default during this period.

Landmark asserts damages for its employee time spent investigating approximately 65 loans brokered by EZ Land, its attorneys' fees in responding to Countrywide, and the ultimate loss of the Countrywide business relationship. The only damages proximately caused by the misrepresentations made regarding the Loan are those directly related to the Loan. There is no factual or legal basis to establish that the damages resulting from misrepresentations by other borrowers are attributable to Debtors. Further, representations made by EZ Land on behalf of other borrowers are outside the apparent authority of a principal-agent relationship between the Debtors and EZ Land. Countrywide's repurchase demands did not include the Loan, and therefore, neither the attorneys' fees incurred responding to its demand nor the subsequent loss of

---
[4] Subsequently, BofA acquired Countrywide and the repurchase demand was not pursued.

business based on defaults in other loans originated by EZ Land are attributable to Debtors.[5] At trial, Landmark provided that it incurred $31,000 in employee time auditing approximately 65 loans. No breakdown of the employee time incurred investigating the Loan was provided. As such, the court finds there is no evidence to establish damages for a nondischargeable claim for employee time spent investigating the Loan.

EZ Land also sued Landmark for unpaid commissions after Landmark stopped payment on a number of commission checks. Landmark asserts a claim for damages in defending against this suit. However, no evidence was presented that prior to the cross-complaint, this action involved or was related to the Loan. Again, there is no evidence to establish damages for a nondischargeable claim on this basis.

Finally, Landmark asserted a cross-complaint against EZ Land and approximately 30 borrowers. The Judgment against Richard Gonzales is based upon this cross-complaint. Landmark asserted that it incurred approximately $100,000 in attorneys' fees pursuing the cross-complaint against EZ Land and the borrowers. No evidence was presented to establish what portion of the attorneys' fees incurred are associated with the Loan, thus, this court does not find a nondischargeable claim on this basis.

In conclusion, the court finds that EZ Land's subjective intent to deceive Landmark may not be attributed to Debtors on an agency theory. Even if such intent were attributed to Debtors, it would not result in a nondischargeable claim, as the damages asserted were not proximately caused by misrepresentations related to Debtors' Loan.

**Down payment:**

Shortly before closing, EZ Land requested that Richard Gonzales write a check for $127,000, payable to Alliance Title. Mr. Gonzales testified that he questioned the loan broker about this and told the broker that they did not have funds to cover the check. He further testified that the loan broker informed him this was okay, that the bank just needed to see the check, and that it would not be cashed. At trial, Landmark introduced a receipt from Alliance Title for the check that included a photocopy of the original check. The

---

[5] The Gonzales Loan remained in good standing at the time Countrywide terminated its business relationship with Landmark.

8

check itself was never cashed and was returned to Mr. Gonzales at some point in time.  Ms. Deanna Gonzales was not present when the check was written.  There was no conclusive testimony as to whether Mr. Gonzales informed her about the check prior to the loan closing.

Mr. Gonzales' testimony at trial provided that he knew when he wrote the check that there were insufficient funds in the account.  His testimony also provided that he was informed that the bank "needed to see it."  Mr. Gonzales asserts that he was simply doing what was requested, was assured that the check would not be cashed by the lender and that he had no intent to deceive Landmark.  The court finds his testimony credible, as Mr. Gonzales had no prior experience in purchasing real estate and relied on the advice of real estate professionals as to what was normal in this type of transaction.

As above, even if the court were to find Mr. Gonzales wrote the check with a subjective intent to deceive, the evidence presented does not establish damages proximately caused by the misrepresentation specific to this Loan.

### 3. § 523(a)(6) - Willful and malicious injury:

Landmark asserts its claim is exempt from discharge on the basis that Debtors acted with the deliberate intent to inflict injury and knew they were committing a wrongful act.  The court does not find that Debtors' misrepresentations in the closing documents were made deliberately or knowingly.  Further, the court does not find that Mr. Gonzales' wrote the check with an intent to cause injury to Landmark, or with substantial certainty that injury would occur.  To the extent that EZ Land's actions could be attributed to Debtors, no damages are established in relation to this Loan, as opposed to damages in relation to EZ Land's fraudulent acts on behalf of other borrowers.  The findings of fraud in the Judgment are insufficient to establish issue preclusion on the basis that knowledge of the fraudulent scheme is assumed, but not proven, on behalf of the borrowers.

9

## Conclusion

The Court finds Landmark's claim against Debtors dischargeable in this Chapter 7 bankruptcy proceeding. Contemporaneous with issuance of this memorandum decision, the court is issuing a judgment finding the debt discharged.

**END OF MEMORANDUM DECISION**

COURT SERVICE LIST

Julie B. Gustavson
Law Office of Julie B. Gustavson
3013 Douglas Blvd. #200
Roseville, CA 95661

<u>Via ECF:</u>

All Recipients